[Nos. 13166–4–I; 15929–1–I.   Division One.   January 21, 1986.]

DAYLETTE M. RODRIGUEZ, *Appellant,* v. DARRELL WADE WILLIAMS, *Defendant,* AMERICAN STATES INSURANCE COMPANY, *Respondent.*

PEMCO INSURANCE COMPANY, *Petitioner,* v. THOMAS L. HOGLUND, ET AL, *Respondents.*

634

*Greg D. Boos, Brett & Daugert,* and *Dean R. Brett,* for appellant.

*Merrick, Hofstedt & Lindsey* and *Sidney R. Snyder, Jr.,* for petitioner.

*Rusing & Platte, Gary M. Rusing, Keller, Rohrback, Waldo, Hiscock, Butterworth & Fardal, William C. Smart, Patterson & Patterson, Mark T. Patterson, Cynthia B. Whitaker, Ellington & Johansen, Helen M. Johansen, Williams, Lanza, Kastner & Gibbs,* and *Mary H. Spillane,* for respondents.

*Bertha Fitzer* and *Fredrick R. Burgess* on behalf of Washington Association of Defense Counsel, amici curiae for insurers.

WILLIAMS, J.—These cases consolidated for purposes of review require determination of the extent of insurance coverage. In the first case, Daylette Rodriguez, age 15, through her guardian ad litem, brought an action against Darrell Williams, her stepfather, and American States Insurance Company for a declaratory judgment that the homeowner's insurance policy American States issued to Williams provides coverage for the damages caused by Williams's incestuous relationship with her. The trial court granted American States's motion for summary judgment of dismissal, and Rodriguez appeals.

The policy provides:

## Section II—Liability Coverages
### Coverage F
### Personal Injury Liability
### and
### Coverage H
### Property Damage Liability

If a claim is made or a suit is brought against any insured for damages because of personal injury or property damage to which this coverage applies, we will:

 a. pay up to our limit of liability for the damages for which the insured is legally liable; . . .

### Section II—Exclusions

1. Coverage F—Personal Injury Liability . . . do[es] not apply to bodily injury or property damage:

 a. which is expected or intended by the insured, but this exclusion does not apply to any act committed by or at the direction of the insured not intended to cause serious bodily injury or property damage;

Clerk's Papers, at 54.

In the second case, Pemco Insurance Company brought an action against Thomas and Kimberly Hoglund, Frederick Mendoza, the guardian ad litem for Kelly and Jessica Hoglund, ages 3 and 1 respectively, Richard Tachibana and his wife and Group Health Cooperative for a declaratory judgment that the homeowner's insurance policy Pemco issued to Thomas Hoglund does not provide coverage for the damages caused by his sexual contact with Kelly his stepdaughter and Jessica his daughter. The trial court denied Pemco's motion for summary judgment, and this court granted discretionary review.

Hoglund's homeowner's insurance policy with Pemco provides:

### Coverage E Personal Liability

If a claim is made or a suit is brought against any insured for damages because of bodily injury or property damage to which this coverage applies, we will:

 a. pay up to our limit of liability for the damages for which the insured is legally liable: . . .

1. Coverage E—Personal Liability . . . do[es] not apply to bodily injury or property damage:

 a. which is expected or intended by the insured; . . .

Clerk's Papers, at 8.

In both cases, the fathers admitted having the alleged relations with their respective children, but denied any intent to injure them. They supplied for the summary judgment proceedings sufficient evidence, through their own affidavits and those of psychologists, to create an issue of such intent.

To be applied are:

certain basic principles that apply in any examination of exclusionary clauses in insurance contracts. Chief among these is that exclusionary clauses are to be most strictly construed against the insurer. The policy should be interpreted in accordance with the way it would be understood by the average person purchasing insurance. It must not be forgotten that the purpose of insurance is to insure, and that construction should be taken which will render the contract operative, rather than inoperative. A construction which contradicts the general purpose of the contract or results in a hardship or absurdity is presumed to be unintended by the parties.

These are principles that are not confined to Washington law, but are of nationwide application.

(Citations omitted.) *Phil Schroeder, Inc. v. Royal Globe Ins. Co.,* 99 Wn.2d 65, 68–69, 659 P.2d 509 (1983), *modified,* 101 Wn.2d 830, 683 P.2d 186 (1984).

In addition, the interpretation of an insurance contract is a question of law to be decided by the court, and the intention of the parties is to be determined from the language of the contract viewed against the setting in which it is formed. *Greer v. Northwestern Nat'l Ins. Co.,* 36 Wn. App. 330, 334–35, 674 P.2d 1257 (1984).

With these precepts in mind, we decide that neither policy was formed with any intent to protect a father from liability for damages caused by his own deliberate sexual assault upon his child or children. The average person purchasing homeowner's insurance would cringe at the very suggestion that he was paying for such coverage. And certainly he would not want to share that type of risk with other homeowner's policyholders. Acts of this nature are of

such a character that an intention to inflict injury can be inferred as a matter of law. *Horace Mann Ins. Co. v. Independent Sch. Dist. 656,* 355 N.W.2d 413, 416 (Minn. 1984); *Fireman's Fund Ins. Co. v. Hill,* 314 N.W.2d 834, 835 (Minn. 1982). *Contra, MacKinnon v. Hanover Ins. Co.,* 124 N.H. 456, 471 A.2d 1166, 1168 (1984). Mental and psychological injuries to a child are the ordinary consequences of a minor child being forced to engage in sexual activity with a parent.

The argument is made that coverage is to be determined from the subjective intent of the individual insured. As seen, the interpretation of an insurance policy is to be made in accordance with the way it would be understood by the ordinary person buying insurance. *See also Ames v. Baker,* 68 Wn.2d 713, 716, 415 P.2d 74 (1966).

Moreover, every purchaser of insurance can expect harm from such conduct. "Expected" means "'more likely than not to occur'." *Medina v. Transamerica Ins. Co.,* 37 Wn. App. 360, 365, 680 P.2d 69, *review denied,* 102 Wn.2d 1004 (1984). A child will more likely than not suffer mental and psychological injuries as a result of having sexual contact with his parent or stepparent. Thus, such injuries would be "expected" by an average, reasonable person. *See CNA Ins. Co. v. McGinnis,* 282 Ark. 90, 666 S.W.2d 689, 691 (1984); *Truck Ins. Exch. v. Pickering,* 642 S.W.2d 113, 116 (Mo. Ct. App. 1982). *But see Alabama Farm Bur. Mut. Cas. Ins. Co. v. Dyer,* 454 So. 2d 921, 925 (Ala. 1984); *Shook v. Tinny,* 112 Ill. App. 3d 741, 461 N.E.2d 642, 645 (1984); *Patrons–Oxford Mut. Ins. Co. v. Dodge,* 426 A.2d 888, 891– 92 (Me. 1981). As a matter of law, Rodriguez's injuries were "expected" by Williams and Kelly's and Jessica's injuries were "expected" by Hoglund.

Accordingly, the judgment in the Rodriguez case is affirmed and the order in the Pemco Insurance Company case is reversed and remanded to the trial court with directions to grant Pemco's motion for summary judgment of

638

dismissal.

WEBSTER, J., and PETRIE, J. Pro Tem., concur.

Review granted by Supreme Court May 6, 1986.